The sole case on our call this afternoon is Agenda No. 14, Case No. 106139, Cook County Republican Party, etc. v. State Board of Elections, etc. Council may proceed when you're ready. You were ready an hour ago, though, weren't you? It's all right, Your Honor. Extra time is always a good thing. May it please the Court, my name is Stephen Bolton, and with my co-counsel, Christine Svensson and Timothy Sprague, I represent the Cook County Republican Party in this proceeding. If it pleases the Court, I'd like to waive any review of the case and move on to what we consider the salient points of argument in the case. Your Honor, the first point that I wish to address is that of judicial review, which is central to this case. In its brief, the Attorney General of the State of Illinois actually agreed with our position that there should be full judicial review on the merits and merits of the case, and that's what we're going to do in this case. Mr. Bolton, may we, before you get too far down the road, could we start with the motion that's been taken with the case, the motion to dismiss? If I'm correct, well, I guess if the clerk's correct, she informs me that there was no objection filed to that motion to dismiss. Well, I took it as a brief, Your Honor, because it was filed. Pardon me? I took it as a brief, Your Honor, in that it addressed the merits of the case, and it was filed on October 3rd on a date which they requested leave to file their brief by October 3rd. Well, the only question I'm getting to is you're not consenting to that motion. No, I'm not consenting to that motion. I will address it in my argument, as I did not file a reply in this brief, given the fact that the Attorney General and our positions align on so many points that there are actually not that many in contention, and I believe I could address it simply on argument with the court rather than file a reply brief. I do not consent to the motion to dismiss, and I will address it in my argument. Your Honors, on the case of judicial review, I wish to point out, as I did, the Attorney General agrees with our position that there should be full judicial review on the merits of this tie vote. I would also note that in an intervening opinion, a panel of the First District has also agreed that there should be full judicial review in the Illinois campaign case at 382 ILAP 3rd 57. There's a logical inconsistency in the opinion taken by the appellate court. In the judicial review statute, it states that any person who files a complaint on which a hearing was denied is entitled to judicial review. In the opinion of the appellate court, however, that is not the case. But the appellate court, importantly, did not rely on any administrative code proceedings in denying judicial review. It relied upon common law. The appellate court, in fact, mischaracterized the holding of the chief case, which we and the Attorney General presented to that court to state that there should be judicial review, the Democratic Committee case out of the 11th Circuit in the D.C. Circuit in Washington. In that case, Justice Ginsburg, now on the Supreme Court, ruled that there should be judicial review on the merits, but in turn remanded the case back to the Federal Election Commission to obtain a statement of their findings. The appellate court also summarily ignored the case law presented from six different states, which stated that a tie vote in front of an administrative agency was an effect of dismissal and was therefore entitled to full judicial review on the merits. Those cases included Supreme Courts in New York, Connecticut, Nevada, and Wyoming. I believe that there is, therefore, a strong body of case law stating that a tie vote is, in fact, a denial and is entitled to full judicial review on the merits. In reaching this decision, the appellate court instead relied upon three state court cases, all of which involved affirmative decisions by a body. In the Richards case, the board issued regulations. In the Abramson case, the board denied a medical license by affirmative vote based upon a fighting of poor character. And in the Zemevowitz case, there was an affirmative vote to partition school property. Mr. Bolton, would you agree that in the world of administrative law, courts do not typically find facts or apply the law to the facts in the first instance? I would agree that as a general principle of administrative review, that's true, Your Honor. However, I believe that in many ways this case presents very unique circumstances. But that is what the appellate court was asked to do in this case, right? No, we asked the appellate court to conduct a de novo review of the case, which is my actual second point, which I would like to go to. Before you go there, and I appreciate your enthusiasm, but I do have a question here. Until recently, Section 9-21 provided that, and I think we have to listen carefully because it's pretty close, but it says, if the board determines that the complaint has not been filed on justifiable grounds, it shall dismiss the complaint without further hearing. That's what it said until recently. Yes, Your Honor. And in comparing that language with the current language, which states that if the board fails to determine that the complaint has been filed under justifiable grounds, it shall dismiss the complaint without further hearing. So doesn't the amendment reflect a clear intention on the part of the legislature to make no hearing the default position? I'm sorry, could you repeat that, Your Honor? Doesn't a clear legislative intent to make no hearing the default position, based on the change in the language, with a hearing reserved only for those complaints that a majority of the board can agree have a justifiable basis? That is the way the legislature currently reads it, Your Honor. That's the way the statute reads today. There's no question about that. Okay. So it would seem that that at least is their intention, right? The legislature's intent, yes. Yeah, the legislature's intention here. But I would also note that in the Illinois Republican Party case, the last time that the votes before the election board came before this court, this court found that there was a policy established in the election code, through its various filings and requirements of financial disclosure, of openness and candidness in the proceedings of the board and its actions. That action by the legislature clearly contravenes the entire intent and spirit of the election code that all should be placed before the public. Due to the new voting requirements that have been enacted in the statute, Your Honor, now a party essentially, four Democrats and four Republicans, a member must vote against his own party to have a case heard in public in open preliminary hearings. Otherwise, the case dies a quiet death behind closed doors in a closed preliminary hearing. So we believe that that was intended to restrict the ability of people to obtain closed preliminary hearings, which we believe is completely contrary to the intent and purpose of the Illinois election code. Your Honors, in the matters brought before the appellate court, there was no action for the court to rule arbitrary or capricious. There was no affirmative exercise of discretion. There was no decision to which to defer. There were no findings to defer to. And there was no application of law to fact, which anybody could judge to be clearly erroneous. Therefore, we assert that there should be de novo review on judicial review when the Illinois election board leaves the case in such a tenure. In the motion to dismiss, filed by some of the individual respondents, they stated that there was a decision, that somehow there must have been one given the statements made in the final order. I invite the court to review the supplementary record in this case, which will demonstrate quite amply that there were tie votes on each one of our cases and that the cases were dismissed upon the existence of the tie vote and the simple operation of the statute. Indeed, that's exactly how the appellate court ruled on the matter by addressing only whether the Illinois state board of elections properly met the election code by dismissing the cases in the event of the tie vote, which they ruled it did. Thus, the appellate court's review was limited solely to whether the Illinois board of elections followed the mechanical operation of the statute and never reached the merits of the case. In its brief, the attorney general has stated that there should be broad discretion allowed to the Illinois state board of elections and that the court should only interfere in the most rarest of occasions. But in so doing, we assert that the attorney general is attempting to pigeonhole the board of elections into the area of administrative agency or department of the state of Illinois. We respectfully assert that given the origin of the Illinois state board of elections, that is not the case. The Illinois state board of elections was established in the Constitution of the state of Illinois by the people of the state of Illinois. And in that Constitution, they laid out a broad purpose for this body to supervise the election laws and regulations of the state. Therefore, when the attorney general or any party states that this is a matter simply of administrative review of an administrative agency, we differ. We state that the Illinois state board of elections is a body unto itself because of its constitutional origin. Similarly, when the attorney general argues against de novo review on separation of powers grounds, as did the appellate court below, we again point back to the Constitution and say this is a constitutionally created body. There was no power of the legislature to grant to the board of elections. The power of the board of elections was granted by the people of the state of Illinois in their Constitution. It therefore becomes the power of this court to state what the Constitution means. So we believe that the state board of elections powers and the limits of that power properly reside in this court, not fiats of the legislature. Therefore, we believe that de novo review is therefore the appropriate standard before this court and its inferior court at the appellate court in deciding on tie votes before the Illinois state board of elections. Your Honors, I've been very interested. Are you getting there with the equal protection claims? I am moving on as rapidly as I can. But, I mean, is that how you're getting to the de novo review? No, I'm standing on the Constitution, Article III, Section 5, in which the Illinois state board of elections is created by the Constitution of 1970. It was not created as an administrative agency by the legislature. Therefore, we believe it is somewhat sui generis. It is its own unique body within Illinois law, and it answers to this court far more than the legislature being a constitutional body. In the motion to dismiss, Your Honors, as I say, the individual respondents stated that there was some sort of a decision, but we invite you to review the record to state that it was not. As an additional grounds in response to the motion to dismiss, we wish to state that these grounds were never raised below. They were never raised in what effectively was the trial court, the Illinois appellate court, because the provisions of the election code allow immediate judicial review at the appellate court level. Therefore, the appellate court operates in effect as a trial court here, and the appellate court, these contentions raised in the motion to dismiss that there was somehow a judgment were never raised below. They should not be heard before this court with due respect to the opposition. Your Honors. You know, I'm having a little trouble on the de novo review. How is it, how would we be able to accomplish a de novo review? I mean, they're not taking evidence or weighing evidence. How would that, I really have a hard time understanding how this court would be able to engage in a de novo review. Your Honor, in this case, as in, as I know, as far as I know, every case before the Illinois State Board of Elections, the entire record before that board is in the record of this case. All of the testimony before the board is in the record. All of the findings of the hearing officer are in the record. The entire two-hour hearing before the Illinois State Board of Elections is in the record of this case. There is Illinois precedent cited in our brief which states that when the entire record is in, the entire proceeding below is in the record of the appellate court, it is therefore quite easy for the appellate court to conduct a judicial review. In fact, the appellate court below even said that they could conduct a de novo review here because of the state of the record, but they chose not to. From a logistical standpoint, de novo review is quite possible in that the entire record is present. Your Honors, in going to the actual merits of the case in the interest of time, I would like to state first what our extremely low version of proof is in the closed preliminary hearing. Under Illinois law, we must make only- versus Illinois Department of Professional Regulation. I see the appellate court use that. I'll give you the quote. On administrative review, it's not a court's function to re-weigh the evidence or make an independent determination of the facts. Rather, the court's function is to ascertain whether the findings and decision of the agency are against the manifest way of the evidence. Consider the record in that case, Judge. In that case, Abramson, there were findings in the record. There was a denial of the medical license based upon the fact that there was misconduct, which was documented in the record. So when the appellate court in that case was presented with a record, they had findings. They had evidence to back up those findings. They had legal decisions with rationales behind them. In this case, the Illinois State Board of Elections gave the appellate court nothing. So I think that there is allowable deference in those kinds of cases, Your Honors. But I believe in this case that that kind of deference and that kind of withholding of judicial review cannot be allowed given the fact that there is nothing here to give deference to. Going back to the... If we agree that some type of administrative review is appropriate, should that initial de novo review be here or should this case be sent back to the appellate court? We would, Your Honors, that is more in the discretion of your body. We believe that the de novo review should occur at this court. It could occur at the appellate court and be remanded for appellate review. As I will show, given the evidence of this case, Your Honors, we believe it is an exercise in judicial economy simply to send this case back to the Illinois State Board of Elections. Our burden of proof at the closed preliminary hearing stage is essentially that of probable cause. The law states only that we should give some reasonable basis, some basis in law and fact as to what we are alleging. As a matter of fact, Justice Bulanek of this court in Illinois State, Illinois Republican Party, admitted that the purpose of the closed preliminary hearing is to act as a safeguard so that there will not be indefensible allegations made in the few days before an election by an opponent. In our case, there are no elections pending. There were no elections pending when we filed this. We filed this very intentionally far from any election. This was an attempt to try and obtain relief upon the merits of our claims. So we, therefore, are under the minimal burden of proof to show some basis. I would submit to you that if you read the record here, that we were put at the Illinois State Board of Elections somewhat unfairly to showing the merits of our case based only on our preliminary investigation. I would note that the Illinois Election Code provides for subpoena power by the board. We would have the power to bring in witnesses. We would have the power to get documentation that we could not get in our initial investigation simply walking into ward offices. We would have greater power to prepare for the open preliminary hearing, yet we were held to the standard of virtually proving our case and whatever we could put together from the outside. In that regard, Your Honors, the Attorney General asserts that the four minority members, the four members who voted against our cases, were adopting the opinion of the General Counsel of the Illinois State Board of Elections. That opinion, Your Honors, was that the affidavit stated clearly that no political activity was observed by our affiant when he walked into the offices and asked questions. Is this where volunteers gather? Is this where volunteers work? Is this where signs are distributed? Is this where palm cards are distributed? All answered in the affirmative. I submit that on the record, Your Honors, out of the eight cases here, and three of them, the committeemen, in these cases, Alderman Beal, Commissioner Beavers, and Commissioner Berrios, each admitted on the record that there was political activity occurring in those city-rented offices. The other five cases, the respondent put on no evidence whatsoever, called no witnesses, brought in no attempt to contest our allegation that there was political activity occurring in the city-rented property. So we therefore have a case in which three of these parties have admitted to political activity. Five of them, the general counsel asked the board to ignore our affidavits, to ignore our photographs, which showed the banner of 15th or 20th or 7th Ward committeemen on the front of the offices, to ignore the affidavits of our affiants who walked in and asked, is this where political activity occurs? Is this where Democratic volunteers gather? Is this where palm cards are distributed? All of which were answered, yes, this is the place. They wanted the Illinois State Board of Elections to ignore the fact that the Democratic Party on its website lists these aldermanic offices as the offices of their committeemen with the same telephone number. He asked the board to ignore all of that and say that there's no political activity, so the cases must be dismissed. We submit that that finding cannot survive any test of law, given the evidence presented in this case and the admissions of three of these parties and the complete refusal of the respondents and the other five to present any defense to our allegations at all. We believe that we more than met our burden to show on a closed preliminary hearing basis some basis of fact and law in our cases. Your Honor, in order to meet my time, I'd like to move on quickly to the constitutional issue, if I might. We simply submit, Your Honor, that no party in this proceeding thus far, be it the Illinois Appellate Court, be it the individual respondents, or be it the Attorney General of the State of Illinois, has ever, ever tried to state or assert that there is not a constitutional deprivation when people who lose on a four-to-four tie are denied full judicial review on the merits, when people who lose five-to-three, six-to-two, seven-to-one, or eight-to-nothing get full judicial review on the merits. No one has even tried to defend that principle in any of the proceedings before this Court. Indeed, because it is indefensible. As Justice Gordon said below, there is no rational reason why we, as litigants who lost in a close vote of four-to-four, should be denied judicial review when people who lose by a wide vote of eight-to-nothing get judicial review. And showing you the equal protection argument, Your Honors, I did find a case in preparing for argument in which this Court upheld a classification on appeal on equal protection grounds. In the case which is Bagdonas v. Liberty Land and Investment Company, 309 Illinois 103, the statute stated that if a receiver was appointed for real property, that could be immediately appealed, but if not, there would be no interlocutory appeal. It was then brought that this was a denial of equal protection. This Court properly reasoned back in 1923 that the creation of the receivership deprives the owner of the real estate of his property rights, because they're going to the receiver. Thus, the Court's action has placed the parties who are under receivership in a completely different legal stance than those who have survived and are not subject to receivership. So the Court there found that the action of the Court had placed the parties in completely different legal positions. I think we're back to the standard of review, too, even in the equal protection argument, because couldn't the rational basis be that judicial review is warranted when there are findings and judicial review isn't warranted when something is dismissed by operation of law? I mean, we get back to the general principles of administrative law and what you're able to review. But go back to the language of the statute, Mr. Justice. Go back to the language of 922 that says any person denied a hearing. It doesn't say dismissed case. It says denied a hearing shall have judicial review, which is precisely what we are. So I believe that the legislature does have a mandate in the election code that we should in fact receive judicial review. Your Honor, I see that my time is up. Counsel, if the Chief permits, I just want to ask you to clarify what you mean by this. In your brief on page 45, this is at the very end of Part 3, you say, I know you don't have it in front of you necessarily, but the constitutional issue is therefore unavoidable and leave to appeal is accordingly requested. Your Honor, that was poor typography. I apologize. So just ignore that? Ignore that. That was the fact that we're a pro bono counsel judge doing this on weekends and late at night. You're contemplating another appeal on this appeal. Your Honor, one's enough, I think, at this point. Unless there are any further questions, I will reserve my time for reply. Thank you, Counsel. Mr. Chief Justice, Your Honors, may it please the Court. My name is Thomas Giaconetti, and I, together with my co-counsel, Sarah M. Gaddola, James Pinelli, and Burton S. Odelson, together with Michael Lavelle, who is not present today, represent the various aldermanic ward committeemen and campaign organizations that were the defendants before the State Board of Elections below. Your Honors, before I go into the presentation I want to make in the order of argument, I think I want to address three of the questions that were raised by the Court very directly first. Justice Thomas, you are correct. The default position is that there is no hearing, and the reason is because the statute requires that there be five votes for an action of the Board to, quote, become effective. So in the absence of five votes, the change in the law after this Court's previous decision, the only Republican Party case is that in the absence of bipartisan consensus majority decision by the Board, the default position is, in fact, that there is not a hearing. And Abramson is exactly on point, and all of those administrative review principles that we cite in our brief, I believe, are on point. Counsel, let me just stop you there, because my purpose in asking that question was really to indicate if the legislature made a default position after that case, which would be no hearing, it certainly isn't above the realm of possibilities to believe that the legislature's position was also no review in the appellate court. That's right. But counsel then raises the argument that he's relying on the Illinois Constitution and says this is more within the purview of the judiciary than it is the legislature. And under his argument, I guess he's not that concerned with what the intent of the legislature is, but rather what this Court deems our role is. So how do you address that argument? We agree that this starts with the Illinois Constitution. The Illinois Constitution created this very unique body, which by law must be four to four in terms of prevailing political parties in the state at the time of the appointment. And the Illinois Constitution requires enabling legislation for the manner, composition, employment, and various processes of the Board. The Constitution ennobles the principle that no one party should have control over the electoral process and grants to this agency a very unique agency. It's not simply just an administrative agency, but it grants to this agency two types of powers, investigatory powers and quasi-judicial powers. The investigatory powers are similar to a prosecutor or the attorney general or the state's attorney. The ability to bring on its own motion complaints, the ability to review filings that are before it and determine whether or not facts should be brought to the intentional law enforcement authorities. The preliminary hearing falls within that category. The initial review and determination of discretion as to whether a charge should go forward. That's an investigatory function. And we believe what the legislature is doing here is recognizing that dichotomy, saying when you're in the investigatory function, fundamentally what is happening is you are protecting all parties brought before the agency to make sure that the agency is not used as a bludgeon, that there is not unfair political advantage, that independence is protected, and that only those complaints that meet the basic threshold of evidence of justifiable cause will go forward and see the light of day in the formal process of a formal open hearing. Once you get to the formal open hearing and you're in a question now where the board is making findings and it's adjudicative function, then those should and are reviewable. And we have no dispute with that. So we believe, along with the nature of your question and counsel, that you start with the Constitution and that this is a very unique agency. Yes, Your Honor. The opposing counsel said if there was an 8-1 or 7-1 or 6-2 vote or 8-0 vote denying a justiciable controversy or justifiable basis, there's a review. Do you agree with that? Yes, there is. Okay. And how does that fit in with your argument that a 4-4 is not reviewable? Because the 8-0 vote or the 7-1 vote is an action of the board, which is defined by statute as meaning five votes. Once the board takes the five-vote step, it is doing a formal action of the board, and that is reviewable. What we have here is not an action of the board. All right? Now, we do maintain in our motion, Your Honor, that in effect we do have an action of the board, because that order that was signed by the chairman, who, by the way, voted in the opposite, you know, in the executive session, is signed by the chairman, it is without dissent, it is a finding of the board, and it does three things. It says, in effect, we reject the hearing officer's recommendation, we accept the recommendation of the general counsel, and we dismiss these cases. So looking at the four corners of that order and not looking to parallel evidence or anything else as to how to interpret the order, it says what it says. So we believe here that we have an order and we don't have a constitutional question at all because it's not a 4-4 tie. When we left the executive session, we knew how the individuals had expressed their opinions, and that is in the transcript. We don't know how and why the final order came out as it is. However, directly to answer your question, yes, if there's action of the board, it's absolutely reviewable. But if there's not action of the board without the fifth vote, the legislature has made a policy determination that it wants bipartisan consensus decision-making and that somebody has to come over from the other side before you bring the power of the agency upon the litigant before it. And I'd also point out, Your Honors, what's interesting about this is that the board has its own investigatory powers and could have brought its own case against any one of these defendants on its own review of filings before it. And the unique circumstance here would be that the board could not have possibly on its own motion brought a complaint for these types of alleged violations unless it had five votes. Our contention is that a private party can have no power than the agency itself. A private party by a default position can't get a formal hearing if the board itself couldn't have garnered five votes by virtue of the fact that there was a tie. So I'd like to also look at the nature of the evidence, but before I do that, let me address the question that was raised by Your Honor concerning the Danova review. Where would that take place? Your Honor, having Danova review anywhere I think underlines the problem here. This is an agency in which the members are by law required to have expertise in election law before they're even appointed. Five of the eight members of this board are lawyers. In the hierarchy of the board process, you go from a hearing examiner who makes a recommendation that is reviewed by a general counsel, that general counsel's recommendation is then reviewed by the board. Five members of this board are attorneys. They are required by law to have expertise in election law. One of them is a former judge, Judge Porter, and the fact of the matter is that they bring to this a specialized knowledge, training, and expertise, which is exactly what your administrative decisions teach us deference should be given to. Deference and discretion should go to an agency charged with the administration and interpretation of a statute that's put under its control, particularly where we have a constitutionally created agency here which has general supervisory power over the election law of the entire state. Next, Justice Garmon, I believe you raised the question about how would the court conduct this Danova review? What would it look to? That's exactly the point that the appellate court raised below. That's exactly the point that all your administrative cases raise. You have the same transcript. You have the same record. And with respect to this court, the question here is, does any court have the same level of learning, training, experience, and expertise that leads to informed decision-making by an agency that has special charge of a statute of special knowledge, such as the Pollution Control Board or the State Board of Elections? So I think the answer to your question is, how could you? You have the same record. They tested the evidence. They tested the materials presented before them, and they had four hours of oral argument with multiple counsels before the board. And what was the nature of the evidence that they had or didn't have? Well, perhaps we should look as to what justifiable causes are. Counsel, before you go into that point, let's back up just a bit. Yes, Your Honor. On the question of your motion to dismiss as well as the arguments that were raised about looking at the supplemental record, does the record include the findings of the hearing officer? That's before us? Yes. What happened in this case is there were eight consolidated cases, Your Honor. You will see you have eight separate records. In each record, yes, there are findings in the hearing examiner. There's a written decision that the hearing examiner presented. And the third finding of the board that's in this order of October 21, 2005, where it says the board adopts the recommendation of the chief legal counsel, again, that information is in the record, is it not? Yes, Your Honor. The general counsel raised three points and they basically agree. So here's my question. When you said we should, you know, look at the four corners of this and it doesn't tell us there's a four-to-four tie, are we then to ignore the rest of the record that may, in fact, reflect that there was a four-to-four tie? Well, Your Honor, no. I think you take the record as a whole and you do what you think is appropriate and fair with the entire record. I will say that the order is required by your own rules, from which the appeal is taken, must be presented as part of the case. And this is the order that was appealed. So it says what it says. I will go beyond that, though, in response to your question and say this, that this board in its expertise knows how to write an order that reflects that there is a tie or a deadlock. It did so in the Illinois Republican Party case that you heard in 1999, and it did so a few months ago in the campaign coalition case that is now in the First District Appellate Court. So when it chooses to write an order like that, it has shown that it can and will do so. And as counsel alluded before, he says, well, the issue here is about a four-to-four tie. You'll always have partisanship. Your Honor, these cases are decided every day. The State Board goes to hearing all the time in public hearings. The fact that some of the appellate review reflect ties shouldn't skew our analysis to understand that the State Board of Election is a continuing body that hears these cases all the time. And many cases, many with very notable defendants, go before the board in public hearings. Counsel, one follow-up question. Was there on this October 21, 2005, final order, not that you can see it, but I know you're familiar with this, was there a separate vote, for example, to accept the language in the order when it was adopted by the board? If it was adopted? Your Honor, we don't know. I will tell you everything we do know. Based on what's in the record, that's what. What's in the record is the chairman closed the hearing after four hours with words to the effect, while we've been at this for four hours, let's go back to open session. He didn't say draft an order in conformity with what the vote's here. He didn't say draft an order in a certain manner. The order was presented to us later on. And this is the order that we received in each of the eight cases. Your Honors, now, if we can look at the evidence. Counsel indicates this large amount of evidence that exists. What are justifiable grounds? We think justifiable grounds, as Troy's decision said, some preliminary showing that the complaint was based upon reasonable grounds and that violations alleged within the ambit of the board's cognizance. We know from Troy, but it's not. It is not newspaper stories. It is not self-serving statements, interviews, and perceptions. Throughout the record, you will see Mr. Swiss testify. No demarcation as I could discern. That's not the standard. They are not assumptions, although assumptions are replete on page 41 of the brief of the appellant. They are not inferences, although inferences are drawn with respect to Alderman Preckwinkle's office, for example, on page 42 of the brief. They're not simply resort to financial records or bill-paying practices. Because in many of these cases, the committeeman submitted a plethora of documentation showing other campaign committees that had, under the law, as they are permitted to do, were actually subsidizing the operation, the total operation of these offices. What else? The statute specifically requires that there be $150 spent, that money be spent in support of or opposition to a candidacy or proposition on the ballot, that the activities be political. The Jenner case is very much on point here. Jenner indicates you don't look to the offices or to the facilities or the equipment. You look to whether or not a payment was made for something that was directly political activity, and that conforms to the definition of a contribution under the Campaign Finance Act. It conforms to the whole idea of what is a political activity. What do we have in this case? No evidence of political activity. Your Honors, if you scour through the record here, you will not find that the complainants were able to discover one iota of political activity occurring in any of these offices. And, in fact, if you go through the record, you will see that in the testimony concerning the Fourth Ward, there was no literature or paraphernalia present. In the testimony concerning the 31st Ward, they heard no discussion of politics, no materials were there, no posted committeeman hours were on the door, the records from the committeeman were kept downtown. This is all in the evidence. In the 39th Ward, they never asked to see a political official, never saw a political official there, overheard no political conversations. In the 40th Ward, they asked to see the committeeman. Well, actually, the gentleman who came in, Swiss, asked to discuss politics. He was told, see the committeeman when the committeeman is here. We don't discuss politics. See him. The fact of the matter is, what do we have? We have hearsay upon hearsay, and we filed a notice to produce the gentleman who signed the verified complaint. If verification means anything, Your Honors, it has to be that we have the right of confrontation under this, a criminal statute, which is a misdemeanor, which has the potential specter of imprisonment. We have the absolute constitutional right of confrontation of the person who signs the verified complaint. A notice to produce was filed. It was ignored. Mr. Skoyne was never produced. Yet his affidavits, his statements, form the basis of the complaint that he verified, statements by third-party persons that were never called as witnesses, form the basis of the affidavits of Mr. Swiss, of the testimony he gave, compound hearsay upon hearsay, and we, as the defendants, put yourself in our position, are trying to defend a case in which these are the people who gave information to Mr. Swiss. In the 4th Ward, a college-age woman. In the 5th Ward, the woman. In the 15th Ward, a certain woman who appeared to have authority in the office. In the 31st Ward, a woman who asked if she could help me in an authoritative manner. In the 39th Ward, a man. In the 40th Ward, a woman in her later 50s. Perhaps the best statement on all of this is what Mr. Swiss said in the 39th Ward case. It didn't occur to me that the name was as important as the information I was to seek. No inquiry as to position, title, authority, who these people were. Not one of them called as a witness. How are you supposed to defend in a situation like that? We believe that in that context, the State Board of Elections did the absolute correct thing. It dismissed this complaint under Troy, under Jenner, and under the general principles of what contributions are under the election code. There was no evidence here. This was simply throwing mere allegations against the wall in the hope against hope that some de minimis activity or admission would result in the finding against our clients and subjecting them then to the full investigatory power of the board. Counsel, if I may, up here. Yes, Your Honor. Are you endorsing a review of the evidence in this case by this court to determine whether or not the ruling was proper? No. I believe, Your Honor, that in the posture that it is, that the State Board should be given tremendous deference and its exercise of discretion if, in fact, you agree with me that there was an order that is an action of the board should be affirmed. If you agree with me that it was a four to four tie, then it's an exercise of prosecutorial discretion and you should affirm for that basis also. Your Honor, I have agreed to Maybe I haven't. Are you suggesting that the order may have been based upon something other than a four to four tie? Your Honor, I can't begin to say how the order came to be written as it was, only what it says. Your Honor, I have reserved time for the Attorney General and I don't want to eat into his time any longer. I have one question, though, if I may. Yes, Your Honor. And maybe you answered this, but I didn't understand it if you did. How do you respond to the argument that any party to a hearing, any party to a board hearing who files a complaint on which a hearing was denied, I guess a hearing was denied here, shall be entitled to obtain judicial review? You have multiple statutes here that I think need to be read together as a whole. What does this one mean? This one means that there is review, but it must be read in conjunction with 9-21, which is a specific statute which was the General Assembly's response to your decision in the Illinois Republican Party in which there were four opinions of the court, all equally reasonable, all equally understandable policy points of view. The legislature chose one over the other. That's a specific statute which we believe controls the general statute, which is 9-20, which is a judicial review statute. But 9-21 doesn't talk about judicial review. It talks about not getting four votes to decide. Yes, Your Honor. So then is the only statute that is effective is the one that says there shall be judicial review when a hearing is denied? When a hearing is denied, Your Honor, it is an action of the board. I agree there should be judicial review. I think you need to read two statutes you cited in conjunction with the statute I think it's 187 that defines the five-vote determination of the board to be an action of the board. I think you have to read all these statutes together. Section 922 says any party to a board hearing, any person who files a complaint on which a hearing was denied, doesn't say action of the board. It just says a hearing was denied, shall be entitled to judicial review. Well, as I said, Your Honor, I think the answer to that question, looking at the statute as a whole, is to divide the functions of this board into an investigative preliminary hearing functions and judicial functions. So if you have a 6-2 vote denying? You are entitled to judicial review. Your Honor, I have some time left for the Attorney General. May it please the Court, Timothy McPike, Assistant Attorney General, representing the Illinois State Board of Elections. Because Mr. Giaconetti went over our agreed time division, I'd ask the Court's leave to give me seven minutes to state my case. You can have five minutes. Thank you, Your Honor. Mr. Bolton, if you need an extra five minutes, you can have that. No, Your Honor, I completely agree. Your Honor, the board believes that the clear legislative intent of the election code after the legislature's 2003 amendment to Section 921 is that even when under Section 921, when there's a failure to determine that the complaint was filed on justifiable grounds because of a tie vote, that there is still judicial review on the merits under Section 922. When they amended Section 921, they did not change 922. And as Justice Carmeier pointed out, 922 says any person denied a hearing is entitled to judicial review. Now, another rule of construction of this Court is that when the legislature acts, this Court presumes that it was aware of the prevailing case law. The prevailing case law in 2003, when it amended Section 921, was this Court's decision in the Illinois Republican Party. Clearly, 921 was amended to change the result of the decision in the Illinois Republican Party. In that case, this Court said that when there's a tie vote, 921, as the previous 921 was interpreted, so that you would go to a hearing. As Justice Thomas pointed out, after the amendment to 921, 921, the default position is when there's a tie vote, you dismiss the case. The legislature was aware of the decision of this Court, and as you will recall, at the appellate level, the Fourth District Court of Appeals held that the case would be dismissed on a tie vote and that there would be judicial review on the merits. And the way that would occur was that the Court would review the reasons of the four members who voted to dismiss, and that would be the review on the merits. That would be the merits of the case that would be reviewed, the reasons of the people who voted to dismiss, those four. That procedure, the Fourth District was adopting the procedure that the District of Columbia Court of Appeals, adopted in the Democratic Campaign Congressional Committee case. Justice Ginsburg's decision, which analyzing the similar Federal Elections Campaign Act, which is statutorily very similar to our election code here, Justice Ginsburg said that was the procedure that the District of Columbia Court of Appeals would follow when there is a tie vote. They would analyze the reasons of the three members who voted to dismiss the case. So we believe that the legislature was aware of this case law, and by amending Section 921, they intended this Court to, or the appellate court in the first instance, to review the merits of a tie vote decision by reviewing the reasons of the four members who voted to dismiss, and that is the merit review that every party is entitled to. Now, I believe that the appellate court's decision here, if you adopt that interpretation, you get a pretty clear issue of whether there's a denial of equal protection. The parties, a party whose decision, whose complaint is dismissed, has a statutory right to merit review based on Section 922, and if you say that a party whose complaint is dismissed by a majority vote gets merit review, but a party who is dismissed by a tie vote does not get merit review, then Section 921 and 922 read together. Clearly, 922 doesn't give the same protection of law to a person who's denied a vote on a tie vote.  Did the appellate court hear, Mr. McPike? Did they review the rationale of the four who voted to dismiss? In this case, the first district appellate court held that all they could do was review the mechanical, was there a tie vote, and was there a dismissal. And so you think that was an error? Yes. I believe it's an error because it raises, first of all, it's not what the legislature intended. On the plain language of Section 921 and 922, a tie vote. So is it your position that it should be remanded for that type of review? I believe you can either remand it, as Mr. Bolton said, you could either remand it or, in your discretion, you could review. We believe the standard of review should be for an abuse of discretion, whether those four members, the reasons that they gave would be an abuse of discretion. We say abuse of discretion because this is an investigative state. So your position is slightly different than Mr. Giaconetti's. Well, it's completely different. I was trying to be nice. Yes. In getting to that, there doesn't seem to be any portion of your argument that where Mr. Giaconetti says, we can't say for sure, the order says what it says, whether it was a four-to-four tie or not, you're taking the position it was definitely a four-to-four tie. We believe that this is the law of the case. They didn't raise that argument below, and the appellate court held, found facts, and if you look at the record, the only facts in the record are that it was a tie vote on each of these eight cases. This was the first case, major case, that the Board of Elections tied on something after the legislature amended 921. Frankly, I think it's in the record, in the transcript, you can see that there's some confusion about, well, we have this tie vote, what are we doing? And I believe in the record is also the general counsel had to remind the board that there had been this amendment to the statute, and now a tie vote was a dismissal. But when that order was written, it's just poorly worded. What the order properly should have said was that the case is dismissed because four members of the board adopt the recommendations of the general counsel. That's another reason why this court, we believe the standard of review should be abuse of discretion because similar to the cases under the Department of Human Rights, under the old statute, when the chief legal counsel of the Department of Human Rights dismisses a case after a preliminary investigation, or in the Public Labor Relations Board, the Murray case that we cite in our brief, when that is dismissed after an investigation, it's at the investigative stage. We agree with Mr. Bolton and Mr. Giaconetti that this is an investigative stage. They're not finding facts and making conclusions of law. They're only determining whether there's sufficient evidence to whether it rises to the level of justifiable grounds for the complaint. So you're essentially reviewing a determination after an investigation and to find a parallel in existing administrative law. You would look to whether that decision, in this case, the four people who voted to dismiss, abuse their discretion in voting to dismiss for the reasons that they've stated. In this case, the reasons are stated in the record as the general counsel's statement, which is in the record. Mr. McPike, we're way beyond five minutes. Thank you, Your Honor. If there's no further questions. We would ask that the Court affirm the Board of Elections for the grounds stated in our brief. May it please the Court. I believe I'll be brief. Mr. Bolton? Yes, sir. I believe you started by saying there is quite a bit of agreement between you and the Attorney General. That's becoming somewhat apparent. Is the only difference that you'd like it remanded for full review of all the evidence, where I believe Mr. McPike thinks it should go back for reversed and reviewed, basically, and whether the four who voted for dismissal abused their discretion in doing that? Well, we disagree on the standard review as well, Justice Thomas. We believe that there should be a de novo standard review here, at best clear error, whereas all of the respondents are arguing that there should be very broad discretion granted to the Board of Elections in this decision. Our position is that given that the, as I will not reiterate, but given the fact that this is a constitutional body, not a legislative body, it is not one that is necessarily granted the broad review of the Administrative Code. It is also one that, given its findings before this Court, it is difficult for us to understand how any discretion is to be granted to them when they have given this Court no basis upon which to decide that there should be discretion, that their discretion was properly exercised. So, therefore, if they're not giving you a basis upon which to decide whether there was a proper exercise of discretion. Mr. Bolton, is there an extensive record in this case? It seemed to me, listening to all the arguments, that there was. There is a fairly extensive record. The testimony below is in the record. The hearing officer reports are in the record. The extensive proceedings, the extensive transcript before the Illinois State Board of Elections in executive session is in the record here. It was a very long hearing in front of the Board. Did the appellate court say that there was a sufficient record to review? Yes. That's in their opinion, sir. They just decided they wouldn't do it. Let me just touch on the deferential nature, whether there's a deferential nature to review. This body, as you have eloquently pointed out to us, is created by the Constitution. And we also learned that there are the appointees to the Board are people who are supposed to be expert in election law. Well, that is Mr. Giaconetti's assertion. I would only point out, Judge, that Mr. Giaconetti made a number of assertions before this Court, but they never filed a brief. So there are a number of assertions that were never put in the record below that they're asking you to rely on and trust us, they're fine, give them all that discretion. I don't deny that they're good and honest people, but I can't accept the sight unseen with deferential. I wonder why this particular Board would be denied discretion when every other Board in administrative law has, not discretion, but deference. Well, two reasons, Judge. One is that they gave you no reason to give them discretion. You'll see in our brief there are cases in which Illinois states if there are no findings to give deference to, the Court can't do it. Essentially, they're asking you to write this Board a blank check. Whatever you do is fine. We're giving you discretion. Even though you've given this Court no basis upon which to decide whether that discretion was properly exercised or not. Our position is not so much fighting to make a unique new administrative law. Our position is simply to say that given this record, there's really no choice but to engage in de novo review because, for example, remand, which is what the Illinois Appellate Court for the First District recently did, to us is not a very good answer, Your Honor. This Board is now different. Members have gone and members have left. Members heard this case years ago. If we were reviewing, if a court was reviewing the four votes to deny. Well, Your Honor, I also believe that going by, which the Attorney General suggested, just taking snippets from the record as to what comments they made in executive session, as to why they might have felt one way or the other, to me is a very dangerous practice. It's akin to taking snippets of oral argument at the Appellate Court and saying, well, that's the rationale of the Court, because of what one justice said at the Appellate Court oral argument. I don't believe that's a proper basis for a foundation of a judgment of either the Appellate Court or this Court. So I reject the practice of straining to find, which is, quite frankly, what they're doing. Some basis, somewhere gives us something that we can give deference to. Our position is countervailing. There are no findings. There is a record. There should be de novo review. Your Honors, with regard to many of the statements that Mr. ‑‑ I will turn more to Mr. Giaconetti said, the Jenner case, which he has raised, sua sponte, without a brief, that is a case, if you note, Judge, in the Jenner case, there was a case where a college's property was used by people opposing a tax referendum. You will see in that case that there was a rent agreement between that committee and that college. In fact, they paid double rent because the college is trying to avoid any sort of inference that public funds are being used. I think a fundamental process, a fundamental principle that's being ignored by the respondents is in the Constitution as well, a different section, Article 8, Section 1A, public funds, property, and credit may only be used for public purposes. So when they say to you that, well, you know, Jenner stands for the proposition that it's really not that bad or anything else like that, there's a fundamental command by our people in that Constitution that this cannot occur. Our entire case was only to try and stop what we believe was use of public money to provide rent-free offices for a political party, whether it's Democrat or Republican. That's the entire nature of our case. We, therefore, ask that this Court send it back to either the State Board of Elections to hold open preliminary hearings, which we believe is the proper and just result given this record and the minimal standards of review that we have had. I would also note that Mr. Giaconetti is once again attempting to place us on a decision virtually on a preponderance of the evidence and the merits when the standard of review, the standard of proof that we must meet at this stage in the proceedings is minimal. But they're attempting to say, well, you haven't proven your case. Well, we're entitled to subpoenas. We're entitled to subpoena witnesses. We're entitled that those five respondents who never even showed up at the hearing with a witness or a document now have to come in and testify as to what's been going on in those offices. So we're only at the opening round of this, Your Honors. And they're asking us to put our case on in chief without discovery, without subpoenas. The best we can do by sending affidavits into offices. I think we have more than met our burden to try and demonstrate that there is a legitimate cause here that is worthy of open public hearings by whatever vote the board may make after them. But we believe we've earned our right to have those open public hearings. Without further questions, Your Honor, I will waive the balance of my time. Thank you, Counsel. Thank you. Case number 106139 will be taken under advisory.